## JESSE M. RICHARDS
### v.
## MARION R. BARRETT.

TRUST FUND—APPOINTMENT OF RECEIVER.—The preponderance of evidence going to show that the fund claimed by appellee as hers absolutely, was a trust fund held for her benefit, the court erred in appointing a receiver to take charge of and pay over the same to her. The trust fund could not, by the several act of the parties or by the action of the court, be destroyed or diverted from its original purpose. If the trustee should mismanage the fund or become insolvent, so as to endanger it, the court could remove him and appoint another to protect the fund from loss.

APPEAL from the Circuit Court of Champaign county; the Hon. C. B. SMITH, Judge, presiding. Opinion filed January 13, 1880.

Messrs. PALMER, PALMER & Ross and Mr. E. S. SWEET, for

appellant; as to the right to a change of venue, cited Rev. Stat. 1874, Chap. 146, § 1; Hitt v. Allen, 13 Ill. 592.

To constitute a valid gift of personal property it must be made in writing or perfected by delivery; the donor must part with dominion over it: Cranz v. Kroger, 22 Ill. 74; Pope v. Dodson, 58 Ill. 360; 2 Kent's Com. 439.

Where there is no consideration for conveyance of property the question becomes one of interest: Tiffany and Bullard on Trusts and Trustees, 19; Steere v. Steere, 5 Johns. Ch. 1.

Generally as to the creation of a trust: Badgely v. Votrain, 68 Ill. 25; Clark v. Lott, 11 Ill. 105; Carhart's App. 78 Pa. — ; Trough's Est. 75 Pa. 115.

Mr. A. J. GALLAGHER and Mr. GEO. W. GERE, for appellee; that the petition for change of venue did not comply with the statute, cited Rev. Stat. 1877, 1033, § 9.

Courts of equity have exclusive control over trustees in the discharge of their duties: Hill on Trustees *42.

Where the absolute beneficial interest in a trust fund is given to the separate use of a *femme*, without restriction as to possession, she is entitled to an immediate transfer of the legal estate to her: Hill on Trustees, *424.

As to what will constitute a valid gift: Hill v. Stevenson, 63 Me. 364; Minor v. Rodgers, 40 Conn. 512; Hardman v. Orr, 5 W. Va. 71; Hardesty v. Richardson, 44 Md. 617; Freeman v. Freeman, 43 N. Y. 34; Kurtz v. Hibner, 55 Ill. 514.

Even if the trust was voluntary and completed, courts would not refuse relief, because it was voluntary: Stone v. King, 7 R. I. 358; Bunn v. Winthrop, 1 Johns. Ch. 337; 2 Cent. Law Jour. 315.

DAVIS, P. J.   This was a bill in chancery filed by appellee against her husband, Eleazer T. Barrett, and her three brothers, Jesse M., Sanford, and Seldon Richards.

The object of the bill was to obtain the appointment of a receiver, to receive and take charge of certain notes in the possession of Richards & Bro. until a final hearing of the cause, and then for the indorsement and delivery of the same to appellee.

In 1862, Jesse M. Richards, O. R. Richards and Eleazer T. Barrett entered into an arrangement under which a grain and warehouse business was to be carried on at Tuscola. Jesse, who resided in Chicago, was to furnish the capital, the other two were to make the purchases, and the grain was to be shipped where and as directed by Jesse, who was to attend to the sales and the financial affairs of the concern. O. R. Richards and Barrett were each to receive one-fourth of the profits, and Jesse the remainder. In 1865, O. R. Richards retired from the concern, and thereafter the business was carried on by Jesse M. Richards and Barrett, the former to receive two-thirds and the latter one-third of the profits. The business was profitable, and during its continuance real estate was purchased, on some of which a residence for Barrett was erected, and improvements made.

About the close of the year 1868, by mutual consent, the business was terminated, and at that time the title to the real estate on which Barrett's house was built, and a block of town lots, was in Richards, and the title to another block of town lots was in Barrett. This real estate was, by mutual agreement between Richards and Barrett, subsequently sold, and the proceeds, amounting to $5,600, were placed by appellant as trustee in the hands of Sandford Richards and Seldon Richards, bankers, as Richards & Bros., to loan, and from the income to pay to Marion R. Barrett ten per cent. per annum, and the excess, if any, to be added to the principal.

Appellee, in her bill filed in this cause, claims that on the dissolution of what she styles the co-partnership, it was agreed between her husband and the appellant, and they settled their co-partnership business upon that basis, that the real estate should be sold, and the proceeds thereof should be her property, and that the moneys realized from the sale of the property, when collected, should from time to time be invested in loans and discounts.

A receiver was appointed who took into his possession the funds in controversy, and on the final hearing of the cause the court below found the appellee to be justly and equitably the owner of the fund, and decreed that the receiver pay over to

Richards v. Barrett.

her the sum of $6,846.08, the amount in his hands, less the sum of $200 allowed to him for his services as receiver, and also decreed that appellant pay the costs including the amount allowed the receiver as compensation. To reverse this decree, this appeal is taken.

Questions have been raised in the case as to whether a co-partnership existed between the parties, and as to whether Barrett had received the full amount due him as his share of the profits of the business, but as we view the case, the determination of these questions is unnecessary. Whatever their relations may have been, and what may have been the condition of their accounts, it is conceded by appellee that a general and final settlement of their business matters was made between them, under which the real estate belonging to them was sold, and the fund in controversy raised, and the only question in the case is whether that fund belongs to appellee.

The claim of appellee is based solely upon what she asserts was the agreement entered into between her husband and appellant on the settlement of their business affairs, that the real estate belonging to them should be sold, and the proceeds be the absolute property of appellee, and be from time to time invested in loans and discounts. This claim of appellee is by no means satisfactorily proved. The only witnesses who testified as to what that agreement was, were Barrett and appellant. Barrett testified that the substance of their general settlement was that the property should be his or his wife's. Appellant in his testimony denies that he ever agreed that the property should become Barrett's or his wife's, but claims that neither of them was competent to take care of it, but would soon lose or spend it, if either had it.

The claim of appellee is attempted to be sustained by the declarations made at different times by appellant, that he had given the property to appellee. But all these declarations were qualified by an assertion on his part that he intended to keep the control of the property so that the income arising from it should be secured to his sister. Even the testimony of appellee and her daughter, introduced to sustain the claim that the property was given to appellee, is to the same effect. They

testified that appellant said to them that the property in Tuscola was appellee's, but he would hold it as trustee, thinking he could manage it better than her husband.

Appellant and Barrett when they closed up their business at Tuscola were the only parties who had any interest or title in the land out of which the fund in controversy arose, and they had the undoubted right to dispose of their property as to them seemed best, and we think it is clear from the evidence and all the facts and circumstances connected with the case, that appellant had no desire to retain any portion of the land for himself, but was willing to surrender whatever interest he might possess in the same for the benefit of his sister, but was determined that it should be so arranged that it should be secured to her, and so protected that it could not be squandered by her or her husband, and that Barrett, who knew himself to be insolvent and not in a position to hold property in his own name, was also willing that it should be so arranged that his wife should receive the full benefit of it. To accomplish this purpose, no doubt the agreement was made about which there is no dispute, that the land should be sold and the money realized from the sale should from time to time be invested in loans and discounts, and it was evidently not the intention of either Barrett or Richards that the proceeds of the land should be the absolute property of appellee, but that they should constitute a fund to be held in trust for her. This view of the case is consistent with the conduct of Barrett and his wife, who for the period of nearly eight years permitted this fund to remain with appellant and be held in trust for appellee, she receiving annually the interest thereon, and making no claim to it whatever as being her property absolutely. The proceeds of the sale of the land were, by the act of the owners thereof, created a trust fund for the benefit of appellee. This trust fund could not by the several act of the parties or by the action of the court below, be destroyed or diverted from its original purpose. If the trustee should mismanage the fund or become insolvent so as to endanger the existence of the fund, a court of equity would interfere and remove the trustee and appoint a new one in his place, so as to protect the fund from loss.

The court below erred in finding that appellee was entitled to the fund, and in decreeing that the receiver should pay the same over to her and that the costs, including the receiver's compensation, should be paid by appellant. For these errors the decree must be reversed and the cause remanded.

Decree reversed.